DECISION AND JOURNAL ENTRY
{¶ 1} Appellant Julie Hickin has appealed from a decision of the Summit County Court of Common Pleas that granted summary judgment in favor of Appellees American Guarantee and Liability Insurance Company and Nationwide Mutual Fire Insurance Company. This Court affirms.
 I {¶ 2} On April 4, 1996, Appellant was driving along State Route 303 in the Village of Peninsula, in Summit County, Ohio, when she was struck by a vehicle driven by Gregory DuBois ("tortfeasor"). At the time of the accident, Appellant was driving her own personal vehicle and was not acting within the course and scope of her employment. As a result of the accident, Appellant sustained permanent injuries. The tortfeasor was insured by Motorists Mutual Insurance Company and maintained injury liability coverage of $50,000. The tortfeasor was driving a rental car owned and insured by Apex Rent-A-Car, which provided an additional $12,500 in liability coverage. Appellant maintained a homeowner's insurance policy with State Farm Fire and Casualty Insurance Company ("State Farm"), which provided uninsured motorist coverage in the amount of $100,000.
 {¶ 3} In January 1997, State Farm waived its right to subrogation against the tortfeasor and gave Appellant permission to settle with the tortfeasor. In March 1997, Appellant executed a full and final release of the tortfeasor in exchange for $62,500; Appellant recovered $50,000 from the tortfeasor's insurance carrier and $12,500 from the rental company. In the same year, Appellant executed a partial release of her own insurer, State Farm, for $37,500 in underinsured motorist coverage.
 {¶ 4} At the time of the accident, Appellant lived with her parents and worked at Arby's Restaurant. She was also employed as a part-time substitute teacher with the Akron Public Schools. Akron Public Schools carried several insurance policies with Nationwide Mutual Fire Insurance Company ("Nationwide") with policy limits of $1,000,000. Appellant's father was employed by A. Schulman Inc., in Tallmadge, Ohio, which carried a policy with American Guarantee and Liability Insurance Company ("American Guarantee") with policy limits of $1,000,000. On December 19, 2001, Appellant brought a declaratory judgment action against Nationwide, American Guarantee, and the unknown insurer of Arby's Restaurant. Appellant sought uninsured ("UM") and underinsured ("UIM") motorist benefits pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins.Co. (1999), 85 Ohio St.3d 660.[1] Both American Guarantee and Nationwide filed answers and cross-claims against all other defendant insurers.
 {¶ 5} Appellant filed an amended complaint on May 20, 2002. In the complaint, she added several defendants: Traveler's Indemnity Company of Illinois ("Traveler's") and State Farm.[2]
 {¶ 6} On September 30, 2002, State Farm filed a motion for summary judgment, wherein it argued that the homeowner's insurance policy issued to Appellant's father was not a motor vehicle liability policy and, as such, was not subject to the mandates of R.C. 3937.18(A). Appellant filed a response to State Farm's motion, wherein it argued that the homeowner's policy generally excluded motor liability coverage, but it contained an exception for bodily injury to a resident employee arising out of and in the course of the resident employee's employment. Appellant argued that because some form of liability coverage for motor vehicles was offered, State Farm was required by Ohio law to offer UM/UIM coverage.
 {¶ 7} On October 4, 2002, American Guarantee filed a motion for summary judgment, wherein it argued that Appellant was precluded from coverage on the ground that 1) Appellant was not an "insured" because its policy contained a "Drive Other Car Coverage Form[,]" which effectively eliminated any ambiguity in the term "you" and that therefore Scott-Pontzer did not apply; and 2) assuming Appellant was an "insured," she failed to comply with the notice and subrogation provisions, thereby materially breaching the insurance contract. On the same day, Appellant filed motions for partial summary judgment against both American Guarantee and Nationwide. In her motions, Appellant argued that the language contained in the insurance policies was ambiguous, and that therefore Scott-Pontzer applied to extend coverage to her.
 {¶ 8} On December 4, 2002, Nationwide filed a motion for summary judgment, wherein it argued that Appellant was not entitled to UM/UIM benefits because 1) Appellant did not qualify as an "insured" under the policies because Akron Public Schools did not have the legal authority to purchase UM/UIM coverage for off-duty employees; 2) the language in the policy was unambiguous, and therefore Scott-Pontzer did not apply and Appellant did not quality as an "insured"; and 3) assuming Appellant was an "insured," she materially breached the notice and subrogation provisions, thereby destroying Nationwide's subrogation rights.
 {¶ 9} On December 16, 2002, Appellant voluntarily dismissed State Farm from the action. Nationwide and American Guarantee voluntarily dismissed their cross-claims against State Farm only.
 {¶ 10} On February 11, 2003, the trial court ruled on the pending motions. It granted American Guarantee's and Nationwide's motions for summary judgment and it denied Appellant's partial motions for summary judgment. With regard to American Guarantee's motion, the trial court held that the term "you" as defined in "WHO IS AN INSURED" was ambiguous and that Scott-Pontzer applied to extend coverage from A. Schulman, Appellant's father's employer, to Appellant's father. Because UM/UIM coverage that arises pursuant to Scott-Pontzer also extends to family members of employees, the court found that Appellant was also an "insured" for purposes of UM/UIM coverage. Although the trial court concluded that Appellant was an "insured," it denied coverage on the ground that Appellant materially breached the notice and consent provisions contained in the insurance policy, thereby destroying American Guarantee's subrogation rights.
 {¶ 11} As to Nationwide's motion for summary judgment, the trial court found that the primary issue "[was] whether [Appellant was] entitled to UM/UIM coverage under Nationwide's [p]olicies issued to the Akron Public Schools even though the school board did not have authority to purchase UM/UIM coverage for off-duty employees and their families." The trial court held that pursuant to Nationwide Agribusiness Ins. Co.v. Wagner (Nov. 13, 2002), 9th Dist. No. 21013, 2002-Ohio-6119, discretionary appeal allowed (2003), 98 Ohio St.3d 1536, Appellant was an insured for purposes of coverage. Appellant was precluded, however, from recovering UM/UIM benefits under the policy because the trial court found that Appellant failed to protect Nationwide's subrogation rights when she failed to comply with the notice and subrogation provisions contained in the policies.
 {¶ 12} Appellant has timely appealed, asserting two assignments of error. Nationwide has cross-appealed, asserting one assignment of error.
 II Assignment of Error Number One
"The Trial Court Erred in Granting Summary Judgment in Favor of [American Guarantee.]"
 {¶ 13} In Appellant's first assignment of error, she has argued that the trial court erred when it held that she was not entitled to UM/UIM benefits because she materially breached the notice and consent provisions contained in American Guarantee's insurance contract.
 {¶ 14} As an initial matter, we note that the appropriate appellate standard of review for an award of summary judgment is de novo. Doe v.Shaffer (2000), 90 Ohio St.3d 388, 390, citing Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711. Thus, this Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Civ.R. 56(C); Viock v. Stowe-Woodward Co.
(1983), 13 Ohio App.3d 7, 12, quoting Norris v. Ohio Std. Oil Co.
(1982), 70 Ohio St.2d 1, 2.
 {¶ 15} According to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewed most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the non-moving party. See State ex rel. Howard v. Ferreri
(1994), 70 Ohio St.3d 587, 589.
 {¶ 16} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists to be litigated for trial. State ex rel.Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 17} Civ.R. 56(C) provides an exclusive list of materials which the trial court may consider on a motion for summary judgment. Spier v.American Univ. of the Caribbean (1981), 3 Ohio App.3d 28, 29. Specifically, the materials include: affidavits, depositions, transcripts of hearings in the proceedings, written admissions, written stipulations, answers to interrogatories, and the pleadings. Civ.R. 56(C). Here, American Guarantee relied on the insurance policies, submitted with its motion for summary judgment.[3]
 {¶ 18} We first note that, in construing the terms of the insurance policy at issue, the Ohio Supreme court has stated that: "[I]nsurance policies should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties." Goodyear Tire Rubber Co. v. AetnaCas. Sur. Co.,95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 8, quoting Rhoades v.Equitable Life Assur. Soc. Of the U.S. (1978), 54 Ohio St.2d 45, 47. Moreover, a contract that contains language which is clear and unambiguous, its interpretation is a question of law. Red Head Brass,Inc. v. Buckeye Union Ins. Co. (1999), 135 Ohio App.3d 616, 627, appeal not allowed (2000), 88 Ohio St.3d 1447.
 {¶ 19} The insurance policy at issue provided:
"A. Coverage
"1. We will pay all sums the `insured' is legally entitled to recover as compensatory damages from the owner or driver of an `uninsured motor vehicle' because of `bodily injury' sustained by the `insured' caused by an `accident.'"
 {¶ 20} Pursuant to the terms of the policy, in order to recover UM/UIM benefits Appellant must be an "insured." If Appellant is an "insured," then this Court must next determine if she is precluded from coverage because of her failure to timely notify American Guarantee of the accident and her subsequent settlement with the tortfeasor. Therefore, in reviewing the trial court's decision, this Court must first determine if Appellant is an "insured."
 {¶ 21} Appellant has contended that she is an "insured" based on the Ohio Supreme Court's holding in Scott-Pontzer. She has argued thatScott-Pontzer applies because the contractual language is ambiguous, and that therefore she is an "insured" for the purposes of UM/UIM coverage. In Scott-Pontzer, the court addressed whether a corporation's employees were entitled to UIM coverage under the corporation's insurance policies. More specifically, the court had to determine if the definition of "insured" included a corporation's employees. A provision in the policy defined "insured" as:
"B. Who Is An Insured
"1. You.
"2. If you are individual, any family member.
"3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
"4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." Scott-Pontzer,85 Ohio St.3d at 663.
 {¶ 22} The coverage form further provided that "[t]hroughout this policy the words you and your refer to the [n]amed [i]nsured shown in the [d]eclarations.'" Scott-Pontzer, 85 Ohio St.3d at 663. The corporation, Superior Dairy, Inc., was listed in the Declarations page of the insurance policy as the "named insured." The court found that the term "you" or "your" was ambiguous, and held that an employee was also an "insured" for purposes of UM/UIM coverage when such an ambiguity exists. Id. at 665 The court explained:
"[I]t would be reasonable to conclude that `you,' * * * also includes * * * employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including to the corporation's employees." Scott-Pontzer, 85 Ohio St.3d at 664.
 {¶ 23} In the instant matter, A. Schulman, Appellant's father's employer, maintained an insurance policy with American Guarantee. The policy contained a provision similar to the "WHO IS AN INSURED" provision discussed in Scott-Pontzer. The provision, which defined "insured" in the section of the policy entitled "OHIO UNINSURED MOTORISTS COVERAGE — BODILY INJURY[,]" stated, in pertinent part:
"B. Who is an Insured
"1. You
"2. If you are an individual, any `family member.'
"3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
"4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'"
 {¶ 24} As the definition of "insured" contained in the present policy is identical to the definition of "insured" contained in theScott-Pontzer policy, we conclude "that `you,' while referring to [A. Schulman], also includes [A. Schulman's] employees, since a corporation can act only by and through real live persons." Scott-Pontzer,85 Ohio St.3d at 664. This Court finds, however, that Appellant does not qualify as an "insured" in light of the Ohio Supreme Court's recent decision inWestfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849.[4]
 {¶ 25} In Galatis, the Ohio Supreme Court addressed "Ohio's law regarding whether uninsured and underinsured motorist insurance issued to a corporation may compensate an individual for a loss that was unrelated to the insured corporation." Galatis, 2003-Ohio-5849, at ¶ 2. In addressing the overwhelming problems that were created as a result of the court's prior holding in Scott-Pontzer, the Galatis court noted that an insurance policy is a contract and it discussed the basic tenets of contract law.
 {¶ 26} The court explained that "[w]hen confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." Galatis, 2003-Ohio-5849, at ¶ 11. Thus, a court must presume that the intent of the parties is reflected in the language used in the policy, which would require the court to look to the plain and ordinary meaning of the language used in the policy. Id. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." Id. However, when the language is capable of more than one interpretation, it is deemed ambiguous and it then becomes the role of the fact finder to resolve any ambiguities. Id. at ¶ 13.
 {¶ 27} In a situation where the ambiguous "contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." Galatis, 2003-Ohio-5849, at ¶ 13. The court further explained that this rule of interpretation has certain limitations. "Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy. Likewise, where `the plaintiff is not a party to [the] contract of insurance * * *, [the plaintiff] is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party.'" (Alterations added; citations omitted.) Id. at ¶ 14.
 {¶ 28} With these contract principles in mind, the Ohio Supreme Court explained that, in the insurance context, the court must construe ambiguities in favor of the insured. "A claimant, however, is not necessarily an insured. An insured can be the policyholder or another who is entitled to insurance coverage under the terms of the policy. When a court decides whether a claimant is insured under a policy, ambiguities are construed in favor of the policyholder, not the claimant." (Emphasis sic.) Galatis, 2003-Ohio-5849, at ¶ 34-35. The problem inherent with the decision in Scott-Pontzer, the Galatis court explained, is that the court "failed to analyze how ruling that an employee is insured outside the course and scope of employment favors the policyholder. Rather, [the court] asked which construction favored the claimant." Id. at ¶ 35 (Alteration added.) In other words, the "Scott-Pontzer [court] ignored the intent of the parties to the contract. * * * The Scott-Pontzer court construed the contract in favor of neither party to the contract, preferring instead to favor an unintended third party." Id. at ¶ 39.
 {¶ 29} Extending coverage to an "unintended third party," distorts the purpose of any contract, especially a motor vehicle policy of insurance issued to a corporation. "The general intent of a motor vehicle insurance policy issued to a corporation is to insure the corporation as a legal entity against liability arising from the use of motor vehicles."Galatis, 2003-Ohio-5849, at ¶ 20, citing King v. Nationwide Ins.Co., 35 Ohio St.3d at 211. A policy that extends coverage to an employee working within the scope of employment provides a direct benefit to the corporation. However, a policy that extends to:
"[A]n employee's activities outside the scope of employment are not of any direct consequence to the employer as a legal entity. An employer does not risk legal or financial liability from an employee's operation of a non-business-owned motor vehicle outside the scope of employment. Consequently, uninsured motorist coverage for an employee outside the scope of employment is extraneous to the general intent of a commercial auto policy." Galatis, 2003-Ohio-5849, at ¶ 20.
 {¶ 30} In concluding that an "unintended third party," or in this case an employee working outside the scope of employment, was entitled to UM/UIM coverage, the Scott-Pontzer court relied on King. In King, an employee, Dale Gordon, was driving a vehicle owned by a co-worker when he suffered fatal injuries as a result of an automobile accident. Gordon was working within the course and scope of employment when the accident occurred. Gordon sought UIM coverage under his employer's insurance policy, but his claim was denied. He then brought a declaratory judgment action against his employer, but the trial court and appellate court found that Gordon was not entitled to UIM benefits. On appeal, the Ohio Supreme Court had to determine "whether underinsured motorist coverage provided in an employer's insurance policy extends to a deceased employee whose fatal injuries were sustained in the course of employment as the result of an automobile accident with an underinsured motorist, where the employee was not listed as a designated driver nor was he in an auto named under the policy issued to his employer." Id. at 209.
 {¶ 31} The King court found that Gordon, although not specifically listed in the employer's insurance policy, was entitled to UIM coverage.King, 35 Ohio St.3d at 214. This decision was based on the fact that the insurance policy was ambiguous because the term "you," referred only to the corporation. The court found that when the name of the corporation was inserted wherever the terms "you" or "your" were used, for example in the phrase "relatives living in your household," the ordinary meaning of the words and phrases became "manifestly absurd." Id. at 212. Therefore, the King court found that, in the context of the insurance policy as a whole, the term "you" and "your" referred to the corporation and its employees working within the scope of employment. Id.
 {¶ 32} The Galatis Court explained that its analysis inScott-Pontzer, and later in Ezawa v. Yasuda Fire Marine Ins. Co. ofAm. (1999), 86 Ohio St.3d 557, took a wrong turn when the court attempted to analyze King v. Nationwide. In King, the Galatis court explained, the employee was entitled to insurance benefits under the employer's insurance policy only because the employee was occupying a vehicle operated by the corporation. Galatis, 2003-Ohio-5849, at ¶ 32. That is, the employee was acting "on behalf of" the corporation while operating the vehicle; thus, the King court equated the employee to the corporation for the purpose of work-related activities and injuries.Galatis, 2003-Ohio-5849. at ¶ 31. Accordingly, the decision in King
does not stand for the proposition that any employee is entitled to coverage under his employer's insurance carrier. The Scott-Pontzer court misinterpreted the holding in King because the Scott-Pontzer court confused the employee's status as an individual with the employee's status as an agent of the corporation. Id. at ¶ 32.
 {¶ 33} Despite the Scott-Pontzer court's illogical decision to extend an employer's UM/UIM coverage to an employee not working within the scope of employment, the Galatis court held that the decision inScott-Pontzer was correct "to the extent that it held that an employee in the scope of employment qualifies as `you' as used in [the employer's insurance policy], and thus, is entitled to uninsured motorist coverage."Galatis, 2003-Ohio-5849, ¶ 31. Therefore, "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment." Id. at ¶ 62. The Court further overruled its prior holding in Ezawa and held that "where a policy of insurance designates a corporation as a named insured, the designation of `family members' of the named insured as `other insureds' does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured." Id. at ¶ 62.
 {¶ 34} This Court notes that "[t]he general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law." Peerless Elec. Co. v. Bowers
(1955), 164 Ohio St. 209, 210. Thus, in accordance with Galatis, we conclude that Appellant is not an "insured." The insurance policy designates the corporation, A. Schulman, as the named insured. The employee, Appellant's father, is not listed as the named insured. Appellant is therefore the "family member" of an employee that is not listed as the named insured.[5] Pursuant to Galatis, which expressly overruled the holding in Ezawa (a case in which the definition of "WHO IS AN INSURED" included "if you are an individual any `family member'"), Appellant cannot qualify as an "insured" and is therefore not entitled to UM/UIM benefits. Consequently, we find that there is no genuine issue of material fact and the trial court did not err in granting summary judgment in favor of American Guarantee.
 {¶ 35} Although the trial court erred in concluding that Appellant was an "insured," and granted summary judgment in favor of American Guarantee on the ground that Appellant breached the notice and subrogation provisions contained in the policy, this Court is empowered to affirm the judgment of the trial court on grounds other than those relied upon by the trial court. Ramco Specialties v. Pansegrau (1998),134 Ohio App.3d 513, 521. "[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." Id., quoting State ex rel. Carter v. Schotten
(1994), 70 Ohio St.3d 89, 92. As such, we find that Appellant's assignment of error lacks merit.
 Assignment of Error Number Two
"The Trial Court Erred in Granting Summary Judgment in Favor of [Nationwide.]"
 {¶ 36} In Appellant's second assignment of error, she has argued that the trial court erred in granting summary judgment in favor of Nationwide. We disagree.
 {¶ 37} As discussed in Appellant's first assignment of error, the appropriate appellate standard of review for an award of summary judgment is de novo. Doe, 90 Ohio St.3d at 390. A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. Brown, 87 Ohio App.3d at 711. In reviewing the merits of Appellant's assignment of error, this Court must first determine whether Appellant is an "insured." If Appellant is an "insured," then we must next determine whether she is precluded from UM/UIM coverage because of her failure to comply with the notice and subrogation provisions contained in Nationwide's insurance policies.
 {¶ 38} Appellant has argued that Scott-Pontzer applies because the term "you" refers only to the corporation, and is thus ambiguous. Appellant maintained in her response to Nationwide's motion for summary judgment, and on appeal, that "[t]he definition of insured contained in the Nationwide policy maintained by [Appellant's] employer, the Akron Public Schools, defines insured in an identical manner to that which was contained in the policy before the Ohio Supreme Court in [Scott-Pontzer]." Appellant is correct in her assertion that the policy provision contained in Scott-Pontzer is virtually identical to the instant provision. Akron Public Schools maintained three insurance policies with Nationwide. Each policy contained a provision which defined the term "insured" in the section entitled "OHIO UNINSURED MOTORISTS COVERAGE." The pertinent provisions stated:
"B. Who is an Insured
"1. You
"2. If you are an individual, any `family member'
"3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
"4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'"
 {¶ 39} Because the definition of "insured" contained in the present policy is identical to the definition of "insured" contained in theScott-Pontzer policy, we conclude that the term "you" is ambiguous and, pursuant to Scott-Pontzer, the term refers to Akron Public Schools and its employees. We find, however, that although Appellant is an employee of Akron Public Schools she does not qualify as an "insured" based onGalatis. As discussed in Appellant's first assignment of error, whenScott-Pontzer applies to an insurance contract the term "you" means the corporation and its employees working within the scope of employment. Here, it is undisputed that Appellant was not working within the scope of employment at the time of the accident. Therefore, pursuant to Galatis,
Appellant is not an "insured" and she is therefore not entitled to UM/UIM benefits.
 {¶ 40} Because we find that Appellant is not an "insured" for purposes of UM/UIM coverage, we do not need to determine whether she breached the notice and subrogation provisions contained in Nationwide's insurance policies when she failed to notify the company of her settlement with the tortfeasor.
 {¶ 41} Although we find that Appellant was not entitled to UM/UIM benefits for reasons different than those relied upon by the trial court, we conclude that the trial court did not err in granting summary judgment to Nationwide. Consequently, Appellant's assignment of error is not well taken.
 Nationwide's Cross-Assignment of Error
"The Trial Court Erred in Determining that [Appellant] Qualified as an Insured Under the Nationwide [Policy]."
 {¶ 42} In Nationwide's cross-assignment of error, it has argued that the trial court erred in determining that Appellant qualified as an "insured." In light of our disposition of Appellant's assignments of error, we need not address Nationwide's cross-assignment of error. See App.R. 12(A)(1)(c).
 III {¶ 43} Appellant's assignments of error are overruled. We need not address Nationwide's cross-assignment of error. The judgment of the trial court is affirmed.
Judgment affirmed.
Baird, P.J., Batchelder, J. concur.
[1] In Appellant's original complaint, she mistakenly named Zurich Insurance Company as a party. However, Akron Public Schools actually carried an insurance policy with American Guarantee, which is one of the many companies that is part of the Zurich Insurance Group of companies.
[2] John Doe Insurance Company, which Appellant named in her initial complaint, was identified as Traveler's. Later, on November 12, 2002, Appellant voluntarily dismissed Traveler's.
[3] If a document does not fall within one of the categories listed in Civ.R. 56(C), it can only be introduced as evidentiary material through incorporation by reference in an affidavit. Martin v. Central OhioTransit Auth. (1990), 70 Ohio App.3d 83, 89. Furthermore, "[d]ocuments which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and shall not be considered by the trial court."Mitchell v. Ross (1984), 14 Ohio App.3d 75, 75. The record reveals that none of the policies were incorporated through the use of an affidavit, and are therefore not proper Civ.R. 56(C) evidence. "However, if the opposing party fails to object to improperly introduced evidentiary materials, the trial court may, in its sound discretion, consider those materials in ruling on the summary judgment motion." Christe v. GMS Mgt.Co. (1997), 124 Ohio App.3d 84, 90, reversed on other grounds (2000),88 Ohio St.3d 376. We find that neither party objected to the policies as being improper Civ.R. 56(C) evidence, therefore this Court will consider the insurance policies attached to each motion for summary judgment.
[4] American guarantee has argued that Scott-Pontzer was inapplicable to the instant matter because of the "Drive Other Car Coverage" endorsement, which specifically set forth additional named insureds. This Court declines to address this argument because of the Ohio Supreme Court's decision in Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849.
[5] The term "family member" is defined as "a person related to you by blood, marriage, or adoption who is a resident of your household, including a ward or foster child."